## SAMUEL R. HAMILTON vs. MORRIS R. HAMILTON.

1. Where the goods of a tenant are levied on by the sheriff under a judgment and execution, left for a long time in the tenant's possession, and then

removed by the tenant to another tenement, and subsequently sold by the sheriff, the landlord cannot compel the sheriff to pay him rent which accrued after the levy was made, by proceedings in the nature of a distress.

2. After the levy made, the goods were constructively in the sheriff's possession; they were not the goods of the tenant within the meaning of the act concerning distresses.

3. The sheriff did not, by suffering the goods to remain on the demised premises, become the tenant of the landlord.

On rule to show cause.

Argued, February term, 1856, before JUSTICES POTTS, RYERSON, and VREDENBURGH; *J. P. Bradley*, for the motion, *S. R. Hamilton*, contra.

The opinion of the court was delivered by

POTTS, J. On the 11th of February, 1854, the sheriff of Essex, by virtue of an execution issued out of this court upon a certain judgment recovered by Samuel R. Hamilton against Morris R. Hamilton, in December, 1853, for the sum of $4792 and costs, levied on the household goods of said Morris R. Hamilton, then being in house No. 18 Centre street, Newark, belonging to John H. Stephens, and in the tenancy of said defendant in execution.

The goods were left by the sheriff in the possession of the defendant in execution, and on the 31st of March, 1855, the defendant removed the said goods from the tenement No. 18 Centre street, belonging to Stephens, to No. 445 High street, in the same city, leaving $230.50, being two quarters' rent and interest, due and in arrears to Stephens, which was reduced by a payment, on the 9th of April, to $116.25, being the amount of the last quarter's rent, due on the 1st of April, and a small arrear of interest.

For this balance of rent due April 1, 1855, Mr. Stephens, on the 19th of April of the same year, caused a landlord's warrant to be levied on the goods, then in No. 445 High street, which were the same goods that had been levied on by the sheriff, and had been removed as aforesaid.

On the 3d of May following the sheriff sold these goods at 445 High street, under and by virtue of the said execution and levy, for the sum of $240, with full notice of the claim of Stephens under the distress for rent due.

At the last June term of this court, a rule was taken by Stephens upon the sheriff, that he show cause why an order should not be made upon him to pay over so much of the money raised by said sale to said John H. Stephens as should be necessary to satisfy the arrears of rent so due to him, and the motion now is to make the rule absolute.

By virtue of the levy made in February, 1854, the legal title to the goods vested in the sheriff, as the officer of the law ; he became thereby responsible for them to the plaintiff in execution, and might have maintained trover against any one who took them away. *Lloyd* v. *Wyckoff*, 6 *Halst.* 218.    The defendant in execution, in whose care the sheriff left them, became the agent or bailiff of the sheriff, and thenceforth held the property in that capacity. *Casper* v. *Peterson*, 1 *South*, 317. The goods were left by the sheriff in the possession of the defendant from February, 1854, until May, 1855, and then sold under the execution. This is the case made on the part of the plaintiff in execution.

Then how stands the claim of Mr. Stephens, the landlord ? It appears that, in April, 1853, he rented the house in Centre street to Morris R. Hamilton, the defendant in execution, until the 1st April, 1854, and then renewed the lease for one year, that is until April 1, 1855. He is charged with notice at the time of this renewal, of the existence of this judgment, execution and levy ; for the judgment was of record, and the execution, with the levy attached, was returned, and on file in the clerk's office of the Supreme Court, as early as February, 1854. He has received not only all the rent which has accrued up to the time of the judgment and levy, but up to the 1st January, 1855, from the tenant who was defendant in execution. His claim is for the rent which accrued between January

1, and April 1, 1855. During all this time the goods, though in the custody of the sheriff, and known so to be by the landlord, remain on the leased premises, and in the actual possession of the tenant, who is the sheriff's bailee, and are not removed until the expiration of the lease. Then they are removed, not by the sheriff, but by the tenant, and subsequently sold by the sheriff.

By the act concerning distresses, *Nix. Dig.* 202, § 14, a landlord may follow goods removed from the demised premises by his tenant, and distrain them for rent unpaid, not exceeding one year's rent, provided he does so within thirty days after such removal. But, by the 8th section of the same act, he can only distrain the goods of his tenant, and not of any other person, though in possession of the tenant.

In *Barker's assignees* v. *Paul,* 4 *Halst.* 110, this court held that goods of a tenant on the demised premises were liable to be distrained for rent, although the tenant had previous to the distress made an assignment of them, under the insolvent act, to assignees for the benefit of his creditors. In that case, the rent for which the distress was made became due on the 25th September, 1822, and the tenant executed the assignment on the 26th of October. The goods were distrained on the 5th of November following, and before they had been removed from the demised premises. In the case before the court, the goods were levied on by the sheriff long before any portion of the rent became due ; in point of fact, the rent had been paid up to a period later than the date of the levy, and they had been removed from the premises some twenty days before they were distrained.

It is true, the Chief Justice, in delivering the opinion of the court in the above case, expressed a decided opinion that the language of the 8th section of the act is to be construed as referring only to property of a stranger, which happened to be brought on some lawful occasion,

and for some lawful purpose, upon the premises, and that. it is not applicable in a question of conflicting claims of creditors to the property of the debtor; yet he predicated his opinion, and the reasons for it, distinctly on the facts as they existed in that case, and he said there was no injustice in allowing the landlord to seize the property of the tenant, which may have been on the premises during the whole period of the demise, and up to the moment of seizure, though a short time before placed by him in a course of application to the payment of his debts.    That case, therefore, cannot be considered as ruling the question now before the court.

Nor is the landlord within the provisions of the act concerning landlords and tenants.    *Nix. Dig.* 418, § 4, 5, and 6.    Here the goods were not removed from the demised premises by the sheriff, which is the case contemplated by those sections of the statute, but by the tenant himself; nor did the landlord, before the expiration of ten days after the removal, give notice to the sheriff of the amount of rent in arrear, and claim the same, as required by the second proviso of the 5th section.

If the landlord has any remedy in this case, it must be founded on the provisions of the 8th and 14th sections of the act concerning distresses.    The goods were removed from the demised premises by the tenant; three months' rent remained unpaid;    the landlord did follow them within thirty days; but were they " the goods of the tenant, and not of any other person " ?    That is the question.    Before the three months, for which rent is claimed, commenced to run, the goods have been seized in execution by the sheriff; of this, the landlord had constructive notice. They had remained on the premises, it is true, until about the time the three months had expired, but the legal title and the constructive possession were all the while in the sheriff. They cannot, we think in any legal sense, be said to have been the goods of the tenant.

Then did the sheriff, by suffering the goods to remain on the demised premises, subject them or himself to liability for the accruing rent? Clearly, as between him and Mr. Stephens, the relation of landlord and tenant did not exist. Hamilton was the exclusive tenant of the premises; there was no underletting by him to the sheriff. And as the claim which the landlord attempts to enforce is founded entirely upon the idea of a tenancy, it must fail.

The rule must be discharged.